ORIGINAL

EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Drug/Organized Crime Section

BEVERLY WEE SAMESHIMA #2556
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  Beverly.Sameshima@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 4 2006

at __ o'clock and __ min. __ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00285 JMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OF PLEA AGREEMENT |
| vs. | ) | |
| | ) | |
| RICHARD FIAPOTO, | ) | |
| aka "Richie Rich," | ) | Date:  April 4, 2006 |
| | ) | Time:  2:00 p.m. |
| Defendant. | ) | Judge: J. Michael Seabright |
| | ) | |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and the Defendant, RICHARD FIAPOTO, also known as "Richie Rich," and his attorney, Michael Green, have agreed upon the following:

1.  Defendant acknowledges that he has been charged in a six count Indictment with one count of knowing and intentional distribution of approximately 100 tablets of 3,4 - methylenedioxymethamphetamine, also known as "MDMA," also known as "Ecstasy," on June 11, 2005 (Count 1); knowing and intentional distribution of a quantity of cocaine, approximately 54.8 grams on June 11, 2005 (Count 2); knowing and intentional distribution of approximately 3,000 tablets of 3,4-methylenedioxymethamphetamine, also known as "MDMA," also known as "Ecstasy," on June 13, 2005 (Count 3); knowing and intentional distribution of approximately 1,500 tablets of 3,4-methylenedioxymethamphetamine, also known as "MDMA," also known as "Ecstasy," on June 23, 2005 (Count 4); possession of 200 tablets of 3,4-methylenedioxymethamphetamine, also known as "MDMA," also known as "Ecstasy," with intent to distribute on June 23, 2005 (Count 5); and knowing and intentional distribution of a quantity of cocaine, approximately 54.7 grams.

2.  Defendant has read the charges against him contained in the Indictment and those charges have been fully explained to him by his attorney.

3.  Defendant fully understands the nature and elements of the crimes with which he has been charged.

4.  Defendant will enter a voluntary plea of guilty to Count 3 of the Indictment charging him with knowing and

intentional distribution of approximately 3,000 tablets of 3,4 methylenedioxymethamphetamine, also known as "MDMA," also known as "Ecstasy." The prosecution agrees to dismiss Counts 1-2, and 4-6 of the Indictment as to the Defendant after sentencing. Defendant agrees that the conduct forming the basis for Counts 1-2 and 4-6 of the Indictment constitutes "relevant conduct" pursuant to Sentencing Guideline § 1B1.3 and shall be used in calculating the Defendant's base offense level pursuant to Sentencing Guideline § 2D1.1.

    5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

    6. Defendant enters this plea because he is in fact guilty of knowing and intentional distribution of approximately 3,000 tablets of 3,4 methylenedioxymethamphetamine, also known as "MDMA," also known as "Ecstasy," as charged in the Indictment, and agrees that this plea is voluntary and not the result of force or threats.

    7. Defendant understands that the penalties for the offense to which he is pleading guilty include:

    a. up to thirty years imprisonment and a fine of up to $2,000,000, plus a term of supervised release of not less than six years and up to life, and

    b. At the discretion of the Court, Defendant may also be denied any or all federal benefits, as that term is defined in 21 U.S.C. § 862, (a) for up to five years if this is Defendant's first conviction of a federal or state offense consisting of the distribution of controlled substances, or (b) for up to ten years if this is Defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances.  If this is Defendant's third or more conviction of a federal or state offense consisting of the distribution of controlled substances, the Defendant is permanently ineligible for all federal benefits, as that term is defined in 21 U.S.C. § 862(d).  In addition, the Court must impose a $100 special assessment as to each count to which the Defendant is pleading guilty.  Defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.  Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

    8. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of

what happened in relation to the charge to which Defendant is pleading guilty:

        a.  In or around May 2005, the Defendant offered to sell quantities of controlled substances to an individual who, unbeknownst to the Defendant was cooperating with law enforcement (hereafter "CS").  On June 11, 2005, Defendant and the CS discussed the purchase price of drugs and agreed to meet later that evening at the Daiei store on Kaheka Street.  At approximately 9:00 p.m., Defendant was observed driving a silver Dodge with another male passenger.  Defendant entered the front passenger seat of the CS's vehicle; the second male entered in the back seat.  Defendant handed the CS a clear plastic bag containing some red colored pills, claiming that it was 100 double stacked "Ecstasy" pills, as well as a clear plastic bag containing an off white powdery substance, which Defendant told the CS was an ounce of cocaine.  The CS agreed to pay Defendant $1,900 for the drugs:  ($1,000 for the Ecstasy and $900 for the cocaine).  The drugs were recovered by officers with the Drug Enforcement Administration ("DEA") immediately after the transaction, identified as Exhibits 1 and 2 and submitted to the DEA Southwest Laboratory for analysis.

        b.  On June 13, 2005, Defendant met with the CS and received a payment of $1,900 for the previous distribution on June 11, 2005.  The CS and Defendant discussed the purchase of

additional quantities of Ecstasy and defendant agreed to "front," that is, provide in advance without payment, approximately 2,000 pills of Ecstasy later that day. At approximately 7:44 p.m., the CS and Defendant met in the CS's vehicle which was parked on Ala Moana Boulevard near the Ilikai Hotel. During the meeting, the CS received a blue plastic bag containing a number of pills. After the meet, the pills were recovered by officers of the DEA, identified as Exhibits 3A, 3B, 3C and 3D and submitted to the DEA Southwest Laboratory for analysis.

      c. On June 22, 2005, the CS and Defendant spoke on the telephone. The Defendant told the CS that he had another 1,000 tablets of Ecstasy and they agreed to meet the next day. On June 23, 2005, the CS and Defendant met at the Daiei parking lot on Kaheka Street. Defendant entered the front passenger seat of the CS's vehicle and was arrested shortly after he distributed a number of bags containing suspected Ecstasy. The bags were recovered from the CS' car and were found to contain tablets and a white powdery substance suspected to be cocaine. These substances were identified as Exhibits 4a, 4b and 7 and submitted to the DEA Southwest Laboratory for analysis. Defendant's vehicle was also searched and two plastic bags containing additional tablets were recovered, identified as Exhibit 8 and submitted to the DEA Southwest Laboratory for analysis.

    d. Defendant was given his constitutional rights which he waived and provided a statement to law enforcement officers.  Defendant provided information concerning the source of the cocaine and Ecstasy that he had distributed.  He also advised that he brought the Ecstasy with him to the meeting at Daiei with intent to distribute it and that the person who he was meeting owed him $20,000 for Ecstasy that Defendant had previously distributed.

    e. Forensic Chemist John Ryan, employed at the DEA Southwest Laboratory analyzed the substances and made the following conclusions:

| Exhibit | Weight | Tablets | Substance |
|---|---|---|---|
| 1 | 27.5 grams | | Cocaine HCl |
| 2 | 25.4 grams | 99 | MDMA HCl |
| 3A | 267.9 grams | 1055 | MDMA HCl |
| 3B | 311 grams | 1004 | MDMA HCl |
| 3C | 233.8 grams | 897 | MDMA HCl |
| 3D | 12.7 grams | 49 | MDMA HCl |
| 4A | 247.1 grams | 952 | MDMA HCl |
| 4B | 10.8 grams | 42 | MDMA HCl |
| 5A | 44.2 grams | 172 | MDMA HCl |
| 5B | 33.4 grams | 128 | MDMA HCl |
| 6 | 51.8 grams | 200 | MDMA HCl |
| 7 | 28 grams | | Cocaine HCl |

| 8 | 51.7 grams | 200 | MDMA HCl |

    f. The Defendant does not dispute the results of the analysis of Exhibits 1-8 conducted by Forensic Chemist John Ryan as set forth in paragraph 8e hereinabove and agrees that the weights and quantities of the controlled substances as determined by the DEA Forensic Chemist are accurate.  The Defendant also admits that the amounts set forth in paragraph 8e shall be used in calculating his base offense level under Sentencing Guideline Section 2D1.1.

    9. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

    10. Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

    a. The United States Attorney agrees that Defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to

Defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if Defendant is otherwise eligible. The Defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

12. The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a). Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in

exchange for the concessions made by the prosecution in this plea agreement.

        a.    The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that Defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

        b.    If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

        c.    The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

        13.    The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of

any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

14. The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

15. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. If Defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant

and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

      c.  If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

      d.  At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant. Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on his own behalf. If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

      e.  At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to

testify, and no inference of guilt could be drawn from his refusal to testify.

  f. At a trial, Defendant would have a right to have the jury determine beyond a reasonable doubt the quantity and weight of the controlled substances as charged in the Indictment.

  16. Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.  Defendant also understands that by pleading guilty he is also specifically waiving his right to have a jury make a determination of the quantity and weight of the drugs involved in the offense to which he is pleading guilty.  Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

  17. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

  18. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

19. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

20. The Defendant further agrees to be bound by this plea agreement and <u>not</u> to seek a withdrawal of the guilty plea that he intends to enter or to withdraw from this plea agreement.

21. Notwithstanding the previous paragraph, if, after signing this memorandum of plea agreement, the Defendant nonetheless decides not to plead guilty as provided herein, or if the Defendant pleads guilty but subsequently makes a motion before the Court to withdraw from the plea agreement and the Court grants that motion, the Defendant agrees that any statements that he makes to law enforcement agents or to the United States Attorney's Office for the District of Hawaii may be used against him in any trial brought against the Defendant. The Defendant further agrees that any admission of guilt that he makes by signing this plea agreement or that he makes while pleading guilty as set forth in this agreement may be used against him in a subsequent trial if the Defendant later proceeds to trial. The Defendant explicitly waives any protection

afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this plea agreement or during the course of pleading guilty when the guilty plea is later withdrawn.

DATED: ~~March~~ April _____, 2006, at Honolulu, Hawaii.

AGREED:

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

_____
FLORENCE T. NAKAKUNI
Chief, Drug/Organized
Crime Section

_____
BEVERLY WEE SAMESHIMA
Assistant U.S. Attorney

_____
RICHARD FIAPOTO
Defendant

_____
MICHAEL GREEN, ESQ.
Attorney for Defendant

15